1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11   ROBERT E. STEPHENSON,

12              Plaintiff,                    No. 2:10-cv-0238 AC P

13        vs.

14   M. MARTEL, *et al.*,                     ORDER AND

15              Defendants.                   ORDER TO SHOW CAUSE

16   _____/

17            Plaintiff is a state prisoner proceeding in pro per and seeking relief pursuant to 42

18   U.S.C. § 1983.[1]  Following resolution of the parties' cross-motions for summary judgment, the

19   court issued a pretrial order on October 25, 2012, to which plaintiff objected.  Accordingly, the

20   undersigned vacated the March 11, 2013 trial date pending resolution of plaintiff's objections to

21   the pretrial order.  Plaintiff has now also filed a motion for a settlement conference and a motion

22   for production of incarcerated witnesses.  Defendants oppose both motions.

23   ////

24   ////

25   _____

26        [1] This action is proceeding before the undersigned pursuant to the parties' consent.  ECF
     Nos. 5, 58.  The case was reassigned on April 18, 2012.  ECF No. 59.

PROCEDURAL BACKGROUND

This action proceeds on the original complaint filed January 29, 2010 alleging that defendants Martel, Long, Olivas, Machado, Palubicki, Wilson, and Whitehead failed to protect plaintiff from an assault by inmate Manuel Urbina, in violation of the Eighth Amendment.[2]  Plaintiff's claim arises under two theories.  Plaintiff first asserts that defendants knew or should have known that Urbina, a Level IV general population inmate, was violent and that they disregarded this information when they allowed Urbina to commingle with Level III Special Needs Yard ("SNY") inmates such as plaintiff, thereby causing an excessive risk to plaintiff's safety.  Second, plaintiff asserts that defendants knew or should have known more generally that commingling Level III inmates with Level IV inmates would result in an excessive risk to plaintiff's safety.

Discovery in this case commenced on August 13, 2010, ECF No. 16, and concluded on January 10, 2011, ECF No. 18.  Following the close of discovery, the parties filed cross-motions for summary judgment.  ECF Nos. 32, 41.  On October 26, 2011, the former magistrate judge assigned to this case recommended that both motions be denied.[3]  ECF No. 48. In recommending that plaintiff's motion be denied, the court found that plaintiff failed to support his theories that defendants should have known there was a potential risk to his safety due to Urbina's history and/or due to the commingling of Level IV inmates with Level III inmates.  As to defendants' motion, the court determined that defendants failed to discuss plaintiff's SNY status and the mixing of general population inmates with SNY inmates.  The court next determined that a genuine issue of material fact existed on the question of whether Level IV general population inmates should have been allowed to commingle with Level III SNY inmates such as plaintiff.  The district court adopted these findings and recommendations in relevant part

---

[2]  All other defendants and claims have been dismissed.

[3]  This matter was transferred to the undersigned on November 19, 2012.  ECF No. 66.

1  on March 31, 2012.  ECF No. 55.

2        Following receipt of the parties' pretrial statements, the court issued a pretrial

3  order on October 25, 2012.  ECF No. 63.  There, the court found fault with both parties' witness

4  lists and directed them to submit modified witness lists.  As to the disputed factual issues

5  remaining, the court listed the following: (1) whether defendants were deliberately indifferent to

6  a substantial risk of serious harm to plaintiff in violation of the Eighth Amendment when,

7  through action or inaction, they permitted inmate Urbina to be in contact with plaintiff, which

8  caused injury to plaintiff; (2) whether defendants are entitled to qualified immunity; and (3) the

9  damages, if any, suffered by plaintiff.

10        Plaintiff filed objections to the pretrial order on December 26, 2012.  ECF No. 69.

11  Generally, plaintiff objects to the proposed testimony of many of defendants' witnesses and the

12  defendants' intention to admit evidence of plaintiff's felony conviction and those of plaintiff's

13  proposed incarcerated witnesses for impeachment purposes.  (Plaintiff submits that he and his

14  witnesses will take a polygraph test to prove their truthfulness).  Additionally, plaintiff requests

15  that discovery be reopened.

16        Also on December 26, 2012, plaintiff filed a motion for a settlement conference

17  and a motion for production of incarcerated witnesses.  Defendants oppose both motions.

18                        DISCUSSION

19  A.    Plaintiff's Motion for a Settlement Conference

20        In his motion for a settlement conference, plaintiff asks the court to schedule a

21  settlement conference and/or mediation session, stating that he has "a realistic expectation of a

22  figure in the 4 to low 5 figure range."  Pl.'s Mot. for Settlement Conf. at 2 (ECF No. 70).

23  Defendants oppose the motion, stating that they "are unwilling to make an offer in any amount"

24  and that the conference "would be a waste of judicial time and resources."  ECF No. 76.  In light

25  of the apparent futility of a settlement conference, plaintiff's motion will be denied.

26  ////

B.   Plaintiff's Objections to Pretrial Order

    1.   Request to Reopen Discovery

        In his objections to the court's pretrial order, plaintiff submits a request to reopen discovery.  This request too will be denied.

        On August 13, 2010, a discovery and scheduling order issued in this case setting December 3, 2010 as the discovery deadline.  ECF No. 16.  On December 7, 2010, defendants filed a motion to modify the scheduling order, which the court granted by order dated December 9, 2010.  ECF Nos. 17, 18.  The discovery deadline was extended to January 10, 2011, giving the parties nearly five months to conduct discovery.

        On December 27, 2010, plaintiff for the first time asked for a continuance of the discovery deadline, which the court denied on February 24, 2011 for lack of good cause.  See ECF Nos. 19, 31.  Since then, plaintiff asked the court twice to reopen discovery, and each time the court denied plaintiff's requests for lack of good cause.  See ECF Nos. 37 (denied by ECF No. 38), 62 (denied by ECF No. 63).

        Plaintiff now repeats his request to reopen discovery.  See ECF No. 69 at 10.  As with his previous requests, plaintiff fails to explain why he was unable to procure the documents he now seeks during the five-month period when discovery was open.  Furthermore, he fails to describe the timely discovery that he *has* propounded, fails to identify how the defendants' responses to any of his discovery requests have been inadequate; and fails to adequately explain why he did not file any motions to compel during the open period of discovery.  While plaintiff states that he did not file a motion to compel because he was awaiting a ruling on his request for a continuance, plaintiff does not explain why it was necessary for the court to rule on that request before he could file a discovery motion.  The court also notes that his request was filed only two weeks before the modified discovery deadline.  Plaintiff does not account for his failure to file a motion to compel at any point during the 4.5 months before his continuance request.  Accordingly, plaintiff's request to reopen discovery is denied, and any further requests to reopen

4

1    discovery will be disregarded.

2          2.    Objections to Defendants' Impeachment Evidence

3          Plaintiff also objects to the defendants' anticipated impeachment of testifying

4    inmates, including plaintiff, with their felony convictions.  Such impeachment is proper.  Fed. R.

5    Evid. 609(a).  Plaintiff's alternative offer to take a polygraph test is unavailing, as polygraph

6    results are not an appropriate way to bolster credibility.  See United States v. Cordoba, 194 F.3d

7    1053, 1063 (9th Cir. 1999), cert. denied, 529 U.S. 1081(2000).  The objection is overruled.

8    C.    Plaintiff's Motion for Production of Incarcerated Witnesses

9          In his motion for production of incarcerated witnesses, plaintiff asks the court to

10   order the appearances of five incarcerated witnesses: Ira Parthemore, Thomas Hightower,

11   Kenneth Tarpley, William Stewart Neely, and Manuel Urbina.  The first four witnesses have

12   submitted declarations describing the matters to which they will testify voluntarily.  The final

13   incarcerated witness, Urbina, is the inmate who attacked plaintiff; his testimony in this case

14   would not be obtained voluntarily.

15         1.    The Undisputed Facts

16         The following facts were deemed undisputed on consideration of the parties'

17   cross-motions for summary judgment (see ECF No. 48):

18         During all relevant times, plaintiff was incarcerated at Mule Creek State Prison

19   ("MCSP") as a Level III inmate, designated SNY.  Defendant Martel was the Warden of MCSP,

20   Long was the Associate Warden, Palubicki was a Correctional Lieutenant, Olivas was a

21   Correctional Captain, Machado was a Correctional Captain, Whitehead was a Correctional

22   Sergeant, and Wilson was a Correctional Counselor.  The specific area of MCSP relevant to this

23   case houses Level III inmates and Level IV inmates.

24         In 2008, MCSP underwent construction to retrofit every cell door throughout the

25   facility.  The project required that each building be emptied of inmates for the duration of the

26   retrofitting of that building's door.  This caused the displacement of groups of inmates at

5

different times in order to accommodate the construction.

In August 2008 ("the period of commingling"), approximately two hundred Level IV inmates from Facility A were placed on Facility C with Level III inmates because Facility A had to maintain one empty housing unit during the construction. As a result, both sets of inmates had to share a yard, whereas before the construction they were not on the yard at the same time. Plaintiff and his facility were SNY inmates while the Level IV inmates were general population inmates; these different groups rarely mix. The segregation of Level III and IV inmates, however, is not required by any statute or regulation.

On August 14, 2008, plaintiff and inmate Urbina, a Level IV general population inmate, were both on the yard at the same time. Plaintiff was sitting down when Urbina approached plaintiff from behind, slashed plaintiff in the face with a sharp object, and then walked away. Plaintiff was immediately taken to the medical clinic, and Urbina was restrained, placed in a holding cell, and subsequently convicted of assault.

Prior to this incident, plaintiff never encountered Urbina, had never seen him, and had never known him. Urbina had never made any threats to plaintiff. None of the defendants had any knowledge or information of any risk that Urbina would assault plaintiff. Plaintiff never communicated to any defendants a concern that Urbina was going to assault him. Plaintiff states that some unidentified prison staff taunted the Level III inmates that the Level IV inmates were going to "take our milk monies." However, plaintiff concedes that none of the defendants in this action made any statements to that effect. There were two correctional officers on the yard at the time of the attack, one of whom was 70-80 yards from plaintiff when the attack occurred.

2.   The Proposed Testimony

Parthemore is an MCSP inmate who witnessed the August 14, 2008 attack on plaintiff by Urbina. ECF No. 72, Ex. A. Parthemore declares that there were no correctional staff present within eyesight during the attack, forcing plaintiff and another inmate to chase Urbina following the attack. Id. ¶ 2. He also declares that just "a few days" prior to the August

14, 2008 incident, Urbina pushed Parthemore so hard that Parthemore fell to the ground; there was no staff response to this attack.  Id. ¶ 3.  Finally, Parthemore declares that Level III and Level IV inmates are never allowed to commingle, and that the violence and unprovoked attacks on the elderly, disabled, and SNY increased greatly during the period of commingling.  Id. ¶¶ 4-5.

Hightower, also an inmate at MCSP, assisted plaintiff in this case with paralegal work and volunteers to act as "counsel and advisor" at the trial.  ECF No. 72, Ex. B.  In his declaration, Highwater speaks to the rate of inmate-on-inmate assaults before, during, and after the period of commingling between the Level III and Level IV inmates.  See id. ¶¶ 7-11.  Hightower also asserts that non-defendant correctional officers taunted inmates in the medication line daily before and during the period of commingling.  Id. ¶ 12.  Hightower offers testimony that in 2000 he witnessed a Level IV inmate cut a Level III inmate with a razor blade.  Id. ¶ 13.  The remainder of Hightower's declaration is directed to MCSP's physical structure and its policies on segregating inmates.  See id. ¶¶ 15-25.

Tarpley has been an inmate at MCSP since 2006.  ECF No. 72, Ex. C.  Tarpley witnessed Urbina's attack on Parthemore on August 13, 2008.  Id. ¶ 3.  Although he did not witness Urbina's August 14, 2008 attack on plaintiff, Tarpley did see Urbina run up after the attack to the Program Office and whisper something to an unidentified yard sergeant.  Id. ¶ 4.  A couple of days after the attack on plaintiff, Tarpley overheard a MCSP correctional officer say that "the impact was smaller than anticipated by staff over bringing 200 level IV inmates to a level III SNY yard."  Id. ¶ 5.  Tarpley also saw and overheard several unidentified officers laugh and joke both about the attack on plaintiff and other, related incidents.  Id. ¶ 6.  Tarpley describes an incident when a SNY inmate was killed by a Level IV inmate on an unspecified date, and officers took pictures of the crime scene that they then passed around amongst themselves.  Id.

Neely, an inmate at MCSP, was a witness to Urbina's attack on plaintiff.  ECF

No. 72, Ex. D.  (Inmate Hightower submits a supplemental declaration as an addendum to Neely's declaration.  There, Hightower repeats Neely's statements made to him regarding the incident at issue and the increased number of attacks on SNY inmates during the period of commingling.)

       3.   <u>Defendants' Objections</u>

       Defendants ask the court to deny plaintiff's motion to produce incarcerated witnesses on the following grounds: (1) Hightower and Tarpley are not percipient witnesses to any relevant facts; (2) Hightower, Parthemore, and Tarpley cannot give lay witness opinions that attacks increased during the period of commingling; (3) Hightower cannot give expert opinion testimony on prison administration policies, procedures, and institutional safety because he is not qualified; (4) Hightower is not allowed to act as plaintiff's "counsel and advisor" at trial; (5) the proposed testimony of plaintiff, Urbina, Parthemore, and Neely is cumulative; and (6) the court should order witnesses to appear by video conferencing.  Defendants argue that the presence of these witnesses will not substantially further the resolution of this case and is outweighed by the security risks presented by the inmates' presence and the expense of transportation and security.

       4.   <u>Analysis</u>

       a.   <u>Non-Percipient Witness Testimony</u>

       Hightower and Parthemore's declarations each proffer testimony concerning the alleged increase in violence against Level III inmates by Level IV inmates during the period of commingling, MCSP's policies regarding SNY inmates, and/or MCSP's physical layout. Hightower's supplemental declaration indicates that Neely also has information regarding the increase in attacks on SNY inmates during the period of commingling.

       Pursuant to Federal Rule of Evidence 701, lay witnesses may provide testimony that goes beyond percipient observations and consists of opinions or inferences:

> If the witness is not testifying as an expert, testimony in the form of opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the

1      witness's testimony or to determinating a fact in issue; and © not
       based on scientific, technical or other specialized knowledge
2      within the scope of Rule 702.

3

4    Fed. R. Evid. 701.

5            The testimony of an expert witness, on the other hand, is governed by Federal

     Rule of Evidence 702, which provides:
6
7            A witness who is qualified as an expert by knowledge, skill,
             experience, training, or education may testify in the form of an
             opinion or otherwise if (a) the expert's scientific, technical, or
8            other specialized knowledge will help the trier of fact to
             understand the evidence or to determine a fact in issue; (b) the
9            testimony is based on sufficient facts or date; © the testimony is
             the product of reliable principles and methods; and (d) the expert
10           has reliably applied the principles and methods to the facts of the
             case.
11

12   Fed. R. Evid. 702.

13           The question here is whether plaintiff's proposed inmate witnesses may testify to

14   the rates of violence at MCSP before, during, and/or after the period of commingling or testify to

15   MCSP's physical structure and policies concerning SNY inmates.  Generally, a "witness may not

16   testify to a matter unless evidence is introduced sufficient to support a finding that the witness

17   has personal knowledge of the matter."  Fed. R. Evid. 602; <u>Carmen v. San Francisco Unified</u>

18   <u>School Dist.</u>, 237 F.3d 1026, 1028 (9th Cir. 2001) ("It is not enough for a witness to tell all she

19   knows; she must know all she tells.").  Other than relying on their "many years at [MCSP]," <u>see</u>,

20   <u>e.g.</u>, Parthemore Decl. ¶ 5, neither Parthemore nor Hightower identify the basis of statements

21   such as "During the month of August 2008, . . . unprovoked violence upon the elderly, disabled,

22   and Level III SNY [inmates] in general, escalated many fold," Parthemore Decl. ¶ 4; "It has

23   always been policy in [the California Department of Corrections and Rehabilitation] that SNY

24   inmates are treated with heightened protection by custody stuff," <u>id.</u> ¶ 6; "Level III and Level IV

25   inmates are not commingled for the very reason that Level IV are highly violent and

26   unpredictable," <u>id.</u>; "Before the Level IV inmates . . . [were] placed on C Facility, this 'SNY'

                                                    9

1  Facility suffered very few fist fights of any kind, the facility also would seldom ever have any

2  mind of weapon attack," Hightower Decl. ¶ 8; "During August 2008, while the Level IV were on

3  C Facility, inmate on inmate assaults went up 10-fold," id. ¶ 9; "Never is [sic] non-SNY inmates

4  mixed with SNY inmates," id. ¶ 15; and "When various levels of custody are on the same facility

5  in large numbers like the 200 inmates in August 2008, it is [Standard Operational Procedures]

6  practice to release the buildings at separate times to avoid conflicts," id. ¶ 16.

7          There is no showing that these inmate witnesses had access to any records of the

8  California Department of Corrections and Rehabilitation on rates of violence at any point of

9  time, let alone the period of commingling, or that they reviewed or were exposed to other

10  documentation on this question.  In addition, there is no submission of any MCSP Standard

11  Operational Procedures or other records or policy manuals that would serve as a basis for either

12  inmate witness's proposed testimony.  The same is true of Hightower's proposed testimony on

13  MCSP's physical structure, the manner in which retrofitting of the cell doors occurred, or the

14  classification of inmates.  In fact, the only basis for the proffered testimony is these inmate

15  witnesses' personal experience with MCSP's policies and procedures as a result of their

16  incarceration.  As defendants correctly point out, the fact that an inmate is incarcerated does not

17  qualify him or her to serve as an expert on prison administration policies, procedures, and

18  institutional safety.  See Manriquez v. Huchins, 2012 WL 5866482, at *3-4 (E.D. Cal. 2012)

19  ("While these inmates state they have personal experience due to their individual experiences

20  while incarcerated, such testimony is insufficient to qualify them as an expert in prison

21  administration or pepper spray."); see also Jones v. Hamelman, 869 F.2d 1023, 1028-29 (7th Cir.

22  1989) ("Given [the inmate witness's] total time of incarceration we do not doubt that he has

23  accumulated a vast reservoir of general knowledge concerning prisons, but this alone falls far

24  short of qualifying him as an expert on disciplinary units, prison gangs and prison

25  communications.").  Accordingly, plaintiff's request will be denied as to this proposed

26  testimony.

1          b.      Percipient Witness Testimony Regarding the Assault on Plaintiff

2          Plaintiff offers the testimony of Parthemore and Neely regarding the August 14,

3 2008 assault by Urbina; plaintiff also requests production of Urbina.  Because Parthemore and

4 Neely witnessed the assault, they are proper witnesses.  However, the court may limit the

5 presentation of cumulative testimony in the interests of efficiency.  See Zivkovic v. Southern

6 California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) (trial courts have wide discretion to

7 limit the presentation of cumulative evidence).  Although the court will not limit plaintiff to his

8 own testimony regarding the assault, Neely's proffered testimony is entirely cumulative of

9 Parthemore's more detailed proffer.  Accordingly, the motion will be denied as to Neely and

10 granted as to Parthemore.

11          Regarding Urbina, plaintiff provides no proffer of the testimony he hopes to elicit

12 or the questions he intends to ask.  Because there has been no showing that Urbina himself

13 would present any relevant and non-cumulative testimony, the request to produce him for trial

14 will be denied.

15          c.      Circumstantial Evidence of Known Threat to Inmate Safety

16          Parthemore offers to testify that Urbina assaulted him a few days before

17 assaulting plaintiff.  Plaintiff also proffers Tarpley's testimony regarding the assault on

18 Parthemore.  The declarations of Tarpley and Hightower both report that non-defendant prison

19 staff taunted Level III inmates regarding the potential negative impacts of commingling.

20          The assault on Parthemore is potentially relevant to defendants' knowledge of the

21 alleged threat to inmate safety posed by Urbina's presence, subject to plaintiff's ability to prove

22 among other things that the named defendants were made aware of the incident.  The motion to

23 produce Parthemore will be granted in any case, on the previously stated grounds that

24 Parthemore witnessed the attack on plaintiff.  The undersigned will not rule out the possibility

25 that Parthemore may also testify about the prior instance of violence by Urbina; that question can

26 be taken up at trial.

1    Tarpley's testimony on the same topic would be cumulative, however, and the

2 remainder of Tarpley's proffered testimony is not relevant.  His proffered testimony regarding

3 taunting by non-defendant correctional staff does not have probative value regarding the

4 defendants' knowledge of and deliberate disregard for a threat to plaintiff's safety.  At most, the

5 proffered testimony regarding taunting indicates a culture of disrespect for inmates among staff.

6 The undersigned does not condone correctional staff disrespect for inmates.  The incident

7 Tarpley recounts of staff passing around photographs of a gruesome inmate murder crime scene

8 is, if true, particularly offensive.  However, such conduct by individuals other than the

9 defendants is not relevant to the question of the defendants' awareness of an imminent threat to

10 plaintiff's safety (or the safety of other Level III/SNY inmates) caused by the temporary

11 commingling.  The overheard remarks regarding anticipated problems from commingling

12 constitute inadmissible hearsay to the extent they are offered for the truth of the matters asserted,

13 and are irrelevant to the extent they are offered as state of mind evidence regarding individuals

14 other than the defendants.  The request to produce Tarpley as a witness will therefore be denied.

15    Plaintiff also proffers the testimony of inmate Hightower on the issue of staff

16 taunting.  That testimony will not be permitted, for the same reasons explained as to Tarpley.

17 Also for reasons explained above, Hightower's proffered testimony regarding inmate

18 classification, housing and yard policies, inmate-on-inmate assault rates, and the dangers and

19 effects of commingling is not admissible.  Hightower's testimony that he had previously

20 witnessed a Level IV inmate cut a Level III inmate with a razor blade is too remote in time to be

21 relevant to the risk of danger in this case, as that incident took place eight years prior in 2000.

22 According to his declaration, Hightower has been serving as plaintiff's investigator and paralegal

23 in this matter.  Hearsay principles would prevent Hightower from testifying about things he

24 learned from other inmates in the course of assisting plaintiff with this case.  Because plaintiff is

25 not entitled to the assistance of another inmate at trial, and because Hightower's own proffered

26 testimony is all either inadmissible and/or cumulative, the request to produce him will be denied.

12

1           d.      Conclusion

2           Plaintiff's motion for production of incarcerated witnesses will be granted as to

3    Ira Parthemore only, and denied in all other respects.  No order for the production of the witness

4    will issue at this time, however, because the issues here decided may become moot.  The trial

5    date has previously been vacated, and was to have been reset following disposition of plaintiff's

6    objections to the pretrial order.  ECF No. 67.  For the reasons now addressed, the court will not

7    reset the trial date.

8    D.     Judgment Independent of the Motion

9           Upon review of plaintiff's pretrial motions and objections to the pretrial order,

10   and in light of the entire record in this case, the undersigned is concerned that the case appears to

11   be headed to trial despite plaintiff's failure to produce evidence to support an essential element

12   of his case.  "District courts unquestionably possess the power to enter summary judgment sua

13   sponte, even on the eve of trial."  Norse v. City of Santa Cruz, 629 F.3d 966, 971 (9th Cir. 2010)

14   (en banc); see also Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982) (holding that

15   district courts may grant summary judgment sua sponte if the parties have had a "full and fair

16   opportunity to ventilate the issues").  Rule 56(f)(3) of the Federal Rules of Civil Procedure

17   provides that the court may consider and grant summary judgment on its own motion after

18   providing the parties fair notice and a reasonable time to respond.  The court hereby notifies the

19   parties that it is considering entering summary judgment for defendants under Rule 56(f), in light

20   of plaintiff's failure of proof regarding deliberate indifference.

21          Plaintiff's claim in this case is that defendants were deliberately indifferent to his

22   safety needs in violation of the Eighth Amendment.  See Farmer v. Brennan, 511 U.S. 825, 832-

23   33 (1994) (prison officials have a duty to protect prisoners from violence at the hands of other

24   prisoners).  As previously noted, this claim proceeds under two theories: First, defendants knew

25   or should have known that Urbina, a Level IV general population inmate, was violent and that

26   they disregarded this information when they allowed Urbina to commingle with Level III

13

1    inmates.  Second, defendants knew or should have known more generally that commingling

2    Level III inmates with Level IV inmates would result in an excessive risk to plaintiff's safety.

3    Plaintiff emphasizes throughout that defendants "should have known" or "must have known" of

4    the risk he alleges.  In essence, his case relies on an inference of knowledge of risk from the fact

5    of the commingling. However, as explained below, plaintiff's evidence is insufficient as a matter

6    of law to support such an inference.

7           The Eighth Amendment requires that prison officials take reasonable measures

8    for the safety of prisoners.  Farmer, 511 U.S. at 832.  To prevail on a claim for threats to safety,

9    an inmate must present evidence to support a finding that he was incarcerated under conditions

10   posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those

11   risks.  See id. at 834; Frost, 152 F.3d at 1128; Redman v. County of Los Angeles, 942 F.2d 1435,

12   1443 (9th Cir.1991) (en banc).  To establish deliberate indifference, a plaintiff must prove that a

13   defendant knew of, but disregarded, an excessive risk to inmate safety.  See Farmer, 511 U.S. at

14   837.  That is, "the official must both [have been] aware of facts from which the inference could

15   be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the

16   inference."  Farmer, 511 U.S. at 837; Frost, 152 F.3d at 1128; Redman, 942 F.2d at 1442.

17          In other words, plaintiff must prove not simply that putting Level IV inmates including

18   Urbina on the Facility C yard was unreasonably dangerous, but that the individual defendants

19   subjectively knew of an objectively serious danger, and disregarded it.

20          Neither negligence nor gross negligence rises to the level of deliberate

21   indifference.  Farmer, 511 U.S. at 835-36 & n.4; see also Estelle v. Gamble, 429 U.S. 97, 106

22   (1976) (deliberate indifference requires more than negligence).  Accordingly plaintiff cannot

23   prevail on proof that defendants were wrong, even unreasonably wrong, in their conclusion that

24   temporary commingling was appropriate and would not increase the level of risk to inmates.  "It

25   is obduracy and wantonness, not inadvertence or error in good faith, that characterize the

26   conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley v. Albers, 475 U.S.

1    312, 319 (1986).

2            Without evidence sufficient to prove deliberate indifference by a preponderance

3    of the evidence, plaintiff cannot prevail.  The undisputed facts establish that none of the

4    defendants knew of any specific or general threat to plaintiff by inmate Urbina.  See Defs.' Mot.

5    for Summ. J., Martel Dec. ¶¶ 2-3; Long Decl. ¶¶ 2-3; Palubicki Decl. ¶¶ 2-3; Olivas Decl. ¶¶ 2-3;

6    Machado Decl. ¶¶ 2-3; Whitehead Decl. ¶¶ 2-3; Wilson Decl. ¶¶ 2-3.  Plaintiff has submitted no

7    evidence to dispute the defendants' lack of knowledge.  Without evidence that these defendants

8    possessed knowledge of any general or specific threat by inmate Urbina, plaintiff fails to

9    establish a genuine issue of material fact.

10           Plaintiff also contends that defendants were deliberately indifferent to his safety

11   when they allowed Level IV inmates to commingle with Level III inmates, despite an allegedly

12   obvious risk of increased rates of violence.  Harsh prison conditions may constitute cruel and

13   unusual punishment in violation of the Eighth Amendment unless such conditions are inherent in

14   the fact of conviction.  Whitley, 475 U.S. at 319; Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

15   To prevail, plaintiff must prove both the objective existence of an unsafe condition and

16   defendant's deliberate indifference to that unsafe condition.  Hudson v. McMillian, 503 U.S. 1

17   (1992).  First, the deprivation alleged must objectively be sufficiently serious, resulting in a

18   denial of the "minimal civilized measures of life's necessities."  Farmer, 511 U.S. at 834 (1994)

19   (quoting Rhodes, 452 U.S. at 347).  "Only extreme deprivations are adequate to satisfy the

20   objective component of any Eighth Amendment claim."  Rish v. Johnson, 131 F.3d 1092, 1096

21   (9th Cir. 1997).

22           The inmate must establish that there was both some degree of actual or potential

23   injury, and that society "considers the [acts] that the plaintiff complains of to be so grave that it

24   violates contemporary standards of decency to expose anyone unwillingly [to those acts]."

25   Helling v. McKinney, 509 U.S. 25, 36 (1993); see also Estelle, 429 U.S. at 102.  As previously

26   noted, plaintiff must also prove that the prison official(s) possesses a sufficiently culpable state

15

1   of mind: "deliberate indifference to inmate health and safety." <u>Farmer</u>, 511 U.S. at 834-36.

2      Here, aside from inadmissible inmate assertions that commingling the Level III

3   and Level IV inmates resulted in increased violence, plaintiff's proffered evidence is not relevant

4   to the question whether a sufficiently unsafe condition objectively existed.  While the inmate

5   witnesses describe various violent incidents against SNY inmates, they have not shown that

6   these incidents exceed the ordinary incidents of prison life.  Contrary to plaintiff's position, the

7   mere fact that inmates of different classifications are allowed to commingle does not constitute

8   proof of objectively dangerous conditions that would pose a substantial risk of serious harm.

9   Plaintiff carries the burden of proof on this issue, which he has failed to meet.

10     Furthermore, the only evidence proffered in support of the state of mind element

11  is (inadmissible) testimony that non-defendant MCSP officers taunted Level III inmates before

12  and during the period of commingling.  There is no evidence, however, that any of the named

13  defendants taunted plaintiff or anyone else; that these defendants were aware of the taunting by

14  other MCSP officers; or that there existed any other facts that would create a triable issue on the

15  question of defendants' deliberate indifference.  <u>See</u>, <u>e.g.</u>, <u>Keel v. Hedgpeth</u>, 2009 WL 321333,

16  at *3 (E.D. Cal. Feb. 9, 2009) (deliberate indifference may be present where the facts show a

17  guard watches an attack, was aware of the risks presented by the attack and then did nothing,

18  firing no shots and waiting for the attack to stop); <u>Robinson v. Prunty</u>, 249 F.3d 862, 867 (9th

19  Cir. 2001) (evidence supported a gladiator-like scenario where prison guards knowingly released

20  inmates onto the exercise yard with hostile inmates, and watched the fighting between the

21  plaintiff and another inmate for five minutes before intervening).

22     In contrast to these cases, there is no evidence here that any of the named

23  defendants taunted plaintiff prior to the assault or that they witnessed the assault on plaintiff.

24  Rather, the undisputed facts show that, following the attack, Urbina was swiftly apprehended,

25  placed in a holding cell, and charged with assault, and plaintiff received urgent medical care.

26  The defendants' immediate reaction to the assault demonstrates they "responded reasonably to

1   the risk, even [though] the harm ultimately was not averted." <u>Farmer</u>, 511 U.S. at 844.  This

2   case is more like <u>Estate of Torres v. Terhune</u>, 2002 WL 32107989 (E.D. Cal. 2002), which

3   involved the fatal shooting of an inmate by prison officials during an altercation on the yard

4   between two different inmate factions.  <u>Id.</u> at *1.  The plaintiff argued that the defendants had

5   been aware of a history of violence between the two factions.  <u>Id.</u> at *8.  On summary judgment,

6   the court concluded that "[t]he kind of evidence that courts have suggested would give rise to an

7   inference of deliberate indifference is entirely lacking here."  <u>Id.</u> at *9 (citing <u>Robinson</u>).

8           The same is true here.  Even if the jury believed the proffered testimony of

9   plaintiff and Parthemore about Urbina's violence toward both of them, and even if this court also

10  admitted and the jury believed the proffered inmate witness testimony about taunting by non-

11  defendant staff, no reasonable trier of fact could conclude that the named defendants were aware

12  of and disregarded a serious risk of inmate-on-inmate violence when they approved and

13  implemented the August 2008 overrides in Facility C.[4]  Indeed, if this case proceeded to trial

14  plaintiff's failure of proof would require the court to grant a motion for judgment as a matter of

15  law under Fed. R. Civ. P. 50(a).[5]

16          In the absence of evidence that there existed an excessive risk to Level III inmates

17  by commingling them with Level IV inmates and in the absence of evidence that the defendants

18  were aware of this risk and disregarded it, the court concludes that there is no genuine issue of

19  material fact with respect to either prong of the Eighth Amendment analysis.  <u>See</u> <u>Celotex Corp.</u>

20  <u>v. Catrett</u>, 477 U.S. 317, 322 (1986) ( summary judgment should be entered against a party who

21  fails to make a showing sufficient to establish the existence of an element essential to that party's

22  _____

23      [4]  The commingling of inmates of different custody levels is known as an "override."  <u>See</u>
     <u>e.g.</u>, Molinelli Decl. ¶ 3.

24      [5]  "If a party has been fully heard on an issue during a jury trial and the court finds that a
25  reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that
     issue, the court may . . . grant a motion for judgment as a matter of law against the party on a
     claim . . . that, under the controlling law, can be maintained . . . only with a favorable finding on
26  that issue."  Fed. R. Civ. P. 50(a)(1).

1  case).  The court therefore invokes its "unquestionabl[e] . . . power to enter summary judgment

2  sua sponte. . . ."  <u>Norse</u>, 629 F.3d at 971.

3          The undersigned is well aware that defendants' previous motion for summary

4  judgment was denied.  ECF Nos. 48, 55.  Under the law of the case doctrine, a prior decision on

5  a factual or legal issue generally should be followed in subsequent proceedings.  <u>Pit River Home</u>

6  <u>and Agric. Coop. Ass'n v. United States</u>, 30 F.3d 1088, 1097 (9th Cir. 1994).  The doctrine is

7  discretionary, however.  <u>Milgard Tempering, Inc. v. Selas Corp. of Am.</u>, 902 F.2d 703, 715 (9th

8  Cir. 1990).  It does not preclude the undersigned, as the judge currently presiding over the case,

9  from exercising the power recognized in <u>Norse</u>, <u>supra</u>, and codified in Rule 56(f).

10          The previously assigned magistrate judge found that there was a triable issue of

11  fact whether "plaintiff as an SNY inmate should not have been placed with general population

12  inmates on the yard."  ECF No. 48 at 8.  The undersigned raises a distinct although related

13  question: whether there is a triable issue of fact that the defendants acted with the requisite

14  mental state in relation to an actual risk.  Even if plaintiff were to prove that the override

15  decision was inappropriate (that "plaintiff as an SNY inmate should not have been placed with

16  general population inmates on the yard"), he could not prevail without proof that the defendants

17  acted with knowing disregard for a serious risk to his safety.

18          The law of the case doctrine is "a judicial invention designed to aid in the

19  efficient operation of court affairs."  <u>Milgard</u>, 902 F.2d at 715.  In this case, because it is

20  apparent that plaintiff lacks evidence necessary to meet his burden of proof, the efficient

21  operation of court affairs is best served by proceeding under Rule 56(f) rather than setting a trial

22  date.  Although the court finds that the parties have already had a "full and fair opportunity to

23  ventilate the issues," the court will grant plaintiff leave to show cause why judgment should not

24  be entered in light of the lack of a genuine issue of material fact.

25          Accordingly, IT IS HEREBY ORDERED that:

26          1.  Plaintiff's motion for a settlement conference is denied;

1       2.  Plaintiff's request to reopen discovery is denied;

2       3.  Plaintiff's motion for the production of incarcerated witnesses is granted in

3 regards to Ira Parthemore and denied in all other respects, but no order for production will issue

4 at this time; and

5       4.  Plaintiff is directed to show cause within twenty-eight (28) days from the date

6 of this order why summary judgment should not be entered for defendants in light of plaintiff's

7 failure to meet his burden of proof on his Eighth Amendment claim.  Plaintiff's brief shall be

8 limited to <u>five pages</u> and should address <u>only</u> his evidence of the defendants' deliberate

9 indifference to a known safety threat.  Although not required, defendants may file a reply brief,

10 also not to exceed <u>five pages</u>.

11 DATED: April 11, 2013.

12

13                      ALLISON CLAIRE

                       UNITED STATES MAGISTRATE JUDGE

14

15 /mb;step0238.osc

16

17

18

19

20

21

22

23

24

25

26